Good morning, Your Honors. I'm William F. Abrams of Steptoe & Johnson, and with me is my colleague, Bo Goodrick of Steptoe & Johnson. Your Honors, we'd like to focus our argument today on the appeal from the denial of the new trial. And on that issue, there are four points that need to be addressed, four issues. One relates to the shackling of the plaintiff and the appellant and the searches that were conducted, and that relates also to improper punishment. The second is the improper classification of Ms. Shorter that put her into the high observation housing unit. The third is the denial of recreational opportunities, and the fourth is the denial of showers. We'll start with the searches, Your Honor, and as this Court has long said, in many cases, there is a very strict scrutiny that's applied to body cavity and strip searches. And in the Kennedy case and in the Way case and in other cases that the Court's familiar with, the Court has been careful to say, for example, in Byrd, in the absence of an expressed intent to punish a pretrial detainee, they nevertheless prevail by showing that the actions are not rationally related to a legitimate, non-punitive governmental purpose or that they appear excessive. The Court has consistently recognized that a body cavity search standing in and of itself is humiliating, is frightening, and is extremely and the justification. And that goes all the way back to the Bell case, and it's consistent with everything the Ninth Circuit has done. In that regard, it's important to see exactly what happened. And going to, in fact, the Aptalese brief at page 11, which quotes from the record AER 86 to 88, this is one of the things that happened on three body cavity searches. Were you able to search out properly? No. Do you want me to continue with the process? It doesn't stop with just the bra and the panties. Okay, please finish. Then she asked for the bra, so I gave her the bra. Then she said, turn around, pull down your underwear, bend over, open your vagina and cough. So I turned around, I pulled down my pants, and I opened my inner thighs and coughed. Can I interrupt for a moment? Because it is clear these are invasive searches, and the record is clear about that. There was a trial. It's not as if there was a grant of summary judgment. Isn't the concern in part here that the instruction was insufficient for the jury to understand that the deference to the State with respect to security concerns did not give the jury the law that it's not unlimited? Isn't that the real problem here? That is a significant problem. The deference that the jury was instructed to provide to the county was unwarranted, and the jury could have at least been provided with an instruction that said, you don't have to give deference if you find that there's no legitimate purpose. But yet the jury was told to provide deference to these actions. And that confused them. That was not proper for them to have before them. But whether they had that instruction or not, the activity that we're talking about under no circumstance can be tolerated, because this search was not just a visual search. It involved, in this occasion that I was quoting from, the plaintiff went on to say... We've read it. We know it's in the briefs. I don't want you to take up your time just reading. My question goes, that evidence was not disputed. So why did you move for a new trial at that point? Because that evidence was undisputed and it's not contested. There was not a motion brought at that point, and I was not the lawyer trying the case at that point. But when the motion for a new trial was brought, there was no conceivable way that a jury could find the way that it found, even with a deference exception, for instruction. For example, not only did we have this invasive search on three occasions, once when she testified, a heavy menstrual cycle. The consequence for that was that she was chained to a post, out of reach of a toilet, out of reach of a bed, out of reach from being able to lie down. That's beyond indecent. It's sadistic. That was her punishment for the subjective decision that she didn't properly comply with the body cavity search. As we know from the cases we just heard from, from Castro and Kingsley, pretrial detainees cannot be the subject of punishment. But this is like the case of, the case of the hitching post. Alabama would put a prisoner at a hitching post until they complied. This is no different than that, other than this is a pretrial detainee. But the punishment for not complying, in their view, the state's, in the county's view, is that you're shackled. And that, the shackling leads to another issue, and that's the recreation time. Do you know whether the, whether L.A. County has changed that practice? They have indeed. They've changed the practice. They now use a body scanner. And there was no reason given at trial. The question was asked, why did you change the policy? Answer, I don't know. But there certainly was a less invasive way to do this. Putting aside that there was no showing that the visual body cavity search had to have been conducted in the very first instance. There was no, no showing. In that regard, the decision that was made to put the plaintiff into the HOH is also one that we challenge, because there's, the classification is improper. Putting a person in the HOH unit requires that person undergo much more scrutiny, much more attention, much more detention. And in this case, the decision was made to put her in that unit, not by a medical health professional, a doctor, a psychologist, it was by a social worker. And the social worker took all of five minutes to make an assessment to recommend that Ms. Shorter be put into the HOH. And if you look at what the criteria was, it was that the prisoner, who was neat, looked up from under her blanket, said, I don't want to have any mental health services. And then the conclusion was that she was belligerent and not cooperative. It's almost a catch-22 situation. Who wouldn't be somewhat not cooperative when you're asked these kinds of questions? You say five minutes, but they looked at all the records. There was a substantial amount of material she considered, and then Ms. Shorter never objected to the classification. Well, I think that she said she didn't want to be there, and she was there. She was confined for 32 days, and people were not listening to Ms. Shorter, as we can see with recreation time. The need for recreation time from the Pierce and other cases is quite clear. Ms. Shorter, I believe, works out to something like less than five minutes a day. But there are two aspects of this that are troubling. Number one, she was not offered recreational opportunities. What she was offered was, or to the extent she even was offered, she could go sit in another room, shackled to another table, and watch television. That's not exercise. That's not being able to do things which you're supposed to do in that kind of a situation. Moreover, it's very clever both with this and with the issue of showers. There's no testimony that she was ever offered the opportunity to get the showers or to have the recreational opportunities. The testimony is that she was never denied those opportunities, but she was never offered those opportunities. So with the recreational issue, it was meaningless being shackled in a TV room with other people present. That doesn't provide exercise. But with both that and the shower, there's no evidence in the record that this was offered to her. They just said they didn't deny it, and that's probably true. Maybe they didn't deny it, but they didn't offer it. It wasn't provided to her in a meaningful way. We can infer from the conduct of the county an intention to punish in this case. We don't have to have them say that, yes, they absolutely had an intention to do it. It is the only logical inference that can be drawn. After all, chaining somebody in a position where they are in public view, by the way, there's no screening, and they're sitting there half naked, chained, as I said, beyond reach of the toilet facilities or even being able to lie down or the bed, that's inhumane under any circumstance. And that's why the motion for new trial should have been granted. That's why the deference instruction should have been given or an instruction that you don't need to find deference if you find that there was no legitimate purpose for this or that it was excessive. One other question. On your appeal of the summary judgment with respect to the medical treatment with regard to her blood callouts, you briefed that under JET. Do you have any comments with respect to whether CASTRO should be extended in this context? Yes, we'd like to see CASTRO extended because it's logical for all the policy reasons of CASTRO as well as Kingsley. They're very instructive, and we don't have the subjective analysis anymore. It's an objective analysis, just as Breyer puts forth in Kingsley. Are there any other questions? I'll reserve the rest of my time. Thank you. Good morning, Your Honors. Rina Matavosian with Nelson and Fulton here with Mr. Henry Patrick Nelson. I'm here for the County of Los Angeles, Leroy Baca, Deputy Avalos, and Deputy Ortiz. May it please the Court. I'd like to address the deference issue in the case that is on point here. This Court actually held that it is error not to instruct a jury to give deference to prison officials' expert judgment. That's where there's bona fide safety and security concerns. What were the security concerns with respect to meals, recreation, and showers? Your Honor, the Norwood case is specific as to conditions of confinement, and it says that the deference instruction must be given in regards to conditions of confinement. In regards to meals, there was no evidence that Ms. Shorter was denied meals. The evidence showed that she was denied meals. No, you didn't answer my question. I said, what are the security concerns, if any, with respect to the meals, recreation, and showers claim? Yes, Your Honor. The housing unit that Ms. Shorter was in, it was a high-observation housing unit. The inmates were known to be violent. They were unpredictable. There was a mass amount of evidence about how these inmates had to be housed in single-man cells, and the inmates were offered recreation. However, it can't be unlimited recreation. Ms. Shorter was not housed in the general population. Was there any dispute that she only had 150 minutes and 32 days, and that was spent chained to a table? Your Honor, she did receive, I believe it was one or two days of recreation. However, it was her that was refusing to do the recreation. She said that she did not want to sit at a table with the other inmates. Well, maybe she didn't want to sit chained at a table, but what about taking her outside? Your Honor, the evidence shows that she was offered recreation, and she specifically refused the recreation. The same was with... But the record was undisputed that recreation meant, by definition, for that unit being chained to a table. That was undisputed, wasn't it? Your Honor, I believe that there was also a basketball court that the inmates could be taken to. From this unit? Yes, I believe one of the county witnesses testified to that fact. And there was also group sessions. I believe Ms. Shorter herself discussed that she could hear other inmates talking, and she didn't want to be any part of it. You would agree that discretion or deference, even if an appropriate instruction is there, is not unlimited? Your Honor, the plaintiffs did not ask for any explanation of the deference instruction. That wasn't my question. You would agree that it is not unlimited, correct? Yes, I would agree to that. And you would agree that that instruction was not given to the jury by the judge? Your Honor, I believe the appropriate instruction was given to the jury. It was a model jury instruction, and it was taken... from a case that's not quite the same as this. But the judge did not instruct the jury that the deference to be given was not unlimited, that it had to be... the jury had to find that it was reasonably related to a pentalogical interest, a legitimate one. The jury never knew that, did they? Your Honor, I would have to look at the language of the exact instruction. However, I don't believe that issue is on appeal. The plaintiffs did not argue that in their appeal, that the... their argument was that the deference instruction should not have been given at all. And our position would be that any such argument would be waived at this point. Does the Court have any other questions? Yeah, I have no questions. I have no questions. Nothing else for me.  Thank you, Your Honor. Thank you, Your Honor. Just to be very brief, to clarify the recreational opportunities, this is in the record, ER-0169, testimony from the county. They're chained to the table the whole time, yes. And in fact, HOH detainees are always handcuffed when they're outside of their cell, yes. Now, HOH detainees don't go to the gym. We don't have a gym. They don't go to the outside rec area, correct. So I'm not sure what could have happened with basketball when you're chained to something the whole time, but that doesn't make sense. With that, Your Honor, unless there are any other questions, we'll submit. No questions. No questions. Thank you very much, counsel. Thank you, Your Honor. Shorter v. Baca will be submitted. Is your firm doing this pro bono, or were you appointed by our court? We are doing this pro bono, Your Honor. Okay, thank you very much. Thank you. Thank you. Okay, we will now take up Trujillo v. The County of Los Angeles.
judges: Wardlaw, Gould, Rogers